**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

QUARTEZ THOMAS, :
Plaintiff, :
v. : Case No. 4:25-cv-49-CDL-AGH
Lieutenant TOELLE, *et al.*, :
Defendants. :

**ORDER & RECOMMENDATION**

Pending before the Court are Plaintiff's motion to amend his complaint (ECF No. 37) and Defendants' motion for summary judgment (ECF No. 19). For the reasons stated below, Plaintiff's motion to amend is granted in part and denied in part. Additionally, it is recommended that Defendants' motion for summary judgment as to Plaintiff's claim against Defendant Toelle for failure to intervene be granted; however, Defendants' motion for summary judgement as to Plaintiff's excessive force claims should be denied.

**OVERVIEW**

This action involves claims against four Defendants, who were officers at Muscogee County Jail (MCJ) at the time the following events occurred. Plaintiff claims that Defendants Ireland, Wright, and Payne engaged in excessive force while engaged in a physical altercation to restrain Plaintiff. Additionally, Plaintiff claims that Defendant Toelle failed to intervene and protect him.

Defendants moved for summary judgment on Plaintiff's claims, and Plaintiff moved to amend his complaint. As explained below, the Court grants in part Plaintiff's motion to amend such that it considered Plaintiff's additional factual allegations that Defendant Ireland engaged in excessive force. Regarding Defendants' motion for summary judgment, Defendants argue that Plaintiff failed to exhaust his administrative remedies and that Plaintiff's complaint was filed outside of the statute of limitations. These arguments fail. Additionally, there is a genuine dispute of material fact as to whether Defendants engaged in excessive force. However, Defendant Toelle is entitled to summary judgment on Plaintiff's failure to intervene claim because Plaintiff failed to show a constitutional violation. Moreover, Defendant Toelle is entitled to qualified immunity on that claim. Therefore, the Court should deny summary judgment on Plaintiff's excessive force claim but grant it on Plaintiff's deliberate indifference claim.

## PROCEDURAL BACKGROUND

Plaintiff's claims arise from his pre-trial confinement at MCJ in Columbus, Georgia. Compl. 4, ECF No. 1. On August 18, 2025, the Court ordered Plaintiff's excessive force claims against Defendants Ireland, Payne, and Wright, and his claim for deliberate indifference against Defendant Toelle, to proceed for further factual development. Order 6, ECF No. 10. On February 17, 2026, Defendants moved for summary judgment on all claims (ECF No. 19).

In response to Defendants' motion for summary judgment, Plaintiff filed a request for production of documents (ECF No. 23). Plaintiff also explained to the

Court that he was unable to obtain requested discovery from Defendants during the discovery period and, therefore, could not timely respond to Defendants' motion. Pl.'s Mot. Ext. Time 1-2, ECF No. 22. Defendants responded that they received no requests for discovery from Plaintiff during the discovery period, apart from his request for production filed with the Court after the close of discovery. Defs.' Resp. to Order 1-2, ECF No. 28. On April 6, 2026, the Court ordered Plaintiff to submit his requests for discovery to Defendants and for Defendants to file all discovery requests and responses with the Court. Order 2, ECF No. 29.

After granting Plaintiff's additional request for extension of time to complete discovery (ECF No. 33), the parties exchanged discovery, and Defendants filed that discovery with the Court on May 19, 2026 (ECF No. 35). In response to the discovery materials, Plaintiff moved to amend his complaint on May 29, 2026 (ECF No. 37), to which Defendants did not respond. Plaintiff then filed his response to Defendants' motion for summary judgment on June 29, 2026 (ECF No. 48).[1] Defendants filed their reply on August 3, 2026 (ECF No. 54). Plaintiff's motion to amend and Defendants' motion for summary judgment are ripe for review.

**MOTION TO AMEND**

Plaintiff filed a motion to amend his complaint (ECF No. 37) on May 19, 2026, after reviewing discovery. Plaintiff moves the Court to add an additional claim of excessive force against Defendant Ireland for "choking [him] in handcuffs with the

[1] Plaintiff's response to Defendants' motion for summary judgment was originally due on March 20, 2026. The Court granted Plaintiff multiple extensions of time to complete discovery and to file his response (ECF Nos. 25, 29, 33, 42).

assistance of his co-workers." Mot. Am. Compl. 2, ECF No. 37. Plaintiff also seeks to add as defendants to this action Officers Colon, Kornegay, Allen, and Trombley for "aiding [Defendant] Ireland [in] choking [him]." *Id.* at 1-2. As discussed below, Plaintiff's motion is granted in part and denied in part.

A plaintiff may file an amended complaint once as a matter of course no later than twenty-one days after service of the original complaint or twenty-one days after the defendant's service of a responsive pleading or Rule 12 motion to dismiss. Fed. R. Civ. P. 15(a). A *pro se* plaintiff does not waive his right to amend as a matter of course by filing a motion to amend instead of an amended complaint. *Toenniges v. Ga. Dep't of Corr.*, 502 F. App'x 888, 889 (11th Cir. 2012). Here, Defendants served an answer on Plaintiff on October 20, 2025, and a motion for summary judgment on February 17, 2026. Defs.' Answer 8, ECF No. 18; Defs.' Br. in Supp. Mot. for Summ. J. (MSJ Br.) 19, ECF No. 19-13. Plaintiff filed his motion to amend on May 19, 2026. Mot. Am. Compl. 4. This is outside the 21-day period allowed under Rule 15 when considering the date of service of the answer. Thus, absent the written consent of the opposing parties, Plaintiff requires leave of court to amend his complaint. Fed. R. Civ. P. 15(a)(2).

Although the Court "should freely give leave [to amend] when justice so requires," the Court "may deny leave to amend as futile when the newly-asserted claims would be barred by the statute of limitations." *Moore v. Smith*, No. 5:21-cv-32-TES-CHW, 2024 WL 7006722, at *1 (M.D. Ga. Mar. 20, 2024) (first quoting Fed. R. Civ. P. 15(a)(2); then citing *Moore v. Baker*, 989 F.2d 1129, 1131 (11th

Cir. 1993)) (internal quotation marks omitted). The Georgia statute of limitations for personal injury actions is two years. O.C.G.A. § 9-3-33; *see also Bell v. Metro. Atlanta Rapid Transit Auth.*, 521 F. App'x 862, 864 (11th Cir. 2013) ("The forum state's statute of limitations for personal injury actions applies to § 1983 claims, which in Georgia is two years."). A statute of limitations begins to run when a cause of action accrues—in other words, when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (internal quotation marks omitted).

Here, the incident at issue occurred on December 15, 2022. Compl. Attach. 1, ECF No. 1-1. Plaintiff contends that he actively struggled against the multitude of officers who attempted to physically remove him from his cell and restrain him on the ground. *Id.* Thus, because he had first-hand knowledge of the events at the time they occurred, Plaintiff's cause of action accrued on December 15, 2022. The resulting deadline to amend his complaint within the statute of limitations would, thus, have been December 15, 2024, but Plaintiff did not file his amendment until approximately eighteen months after the statute of limitations ran. However, Plaintiff may still amend if his amendments relate back to his original complaint.

A plaintiff's amended claim relates back to the date of the original pleading if it satisfies either the standard under federal law or the state law that provides the applicable statute of limitations. Fed. R. Civ. P. 15(c). Under both federal and Georgia law, an amendment to a claim relates back if it arises out of the same

"conduct, transaction, or occurrence" set forth or attempted to be set forth in the original pleading. Fed. R. Civ. P. 15(c)(1)(B); O.C.G.A. § 9-11-15(c). Here, Plaintiff seeks to add another claim of excessive force against Defendant Ireland for choking him while he was incapacitated. Mot. Am. Compl. 2. Plaintiff already brought similar claims against Defendant Ireland, as discussed below. Therefore, Plaintiff's choking allegation squarely relates back to his initial excessive force claim against Defendant Ireland. The Court thus **GRANTS** this amendment to the extent that it construes it as additional factual allegations brought against Defendant Ireland.

Plaintiff also seeks to bring claims for excessive force against three defendants whom he did not originally name. Again, Plaintiff may satisfy the nearly identical requirements of either federal or Georgia law for his amendment to relate back to the initial complaint. Fed. R. Civ. P. 15(c). Both of these rules have three requirements: (1) Plaintiff's claims against the new defendants must satisfy the same "conduct, transaction, or occurrence" test as articulated above; (2) within time for service of the initial summons and complaint, the new defendants were placed on notice of the action such that they will not be prejudiced by maintaining their defense on the merits; and (3) the new defendants knew that they would be brought into the action but for a mistake regarding their identity. Fed. R. Civ. P. 15(c)(1)(C); O.C.G.A. § 9-11-15(c). Here, Plaintiff has not shown that these new defendants were on notice of his suit during the time in which he commenced this action, nor has he alleged that there was an issue of mistaken identity.[2] Thus, Plaintiff's amendment

[2] In his relevant grievance, Plaintiff did state that he wished to sue "John Doe and any other officer such as c/o [A]llen if involved." Horan Attach. Ex. D, at 829, ECF No. 19-12. However, Plaintiff did

fails both relation back tests, and his motion to amend is **DENIED** to the extent that he cannot add new defendants to this action. *See, e.g.*, *Presnell v. Paulding Cnty.*, 454 F. App'x 763, 768 (11th Cir 2011) (affirming district court's denial of motion to amend as futile because plaintiff "wholly failed to show that either new party received notice of the institution of th[e] action such that he would not be prejudiced").

## SUMMARY JUDGMENT DISCUSSION

Defendants argue that they are entitled to summary judgment on four grounds. MSJ Br. 6-17. First, Defendants claim that Plaintiff failed to exhaust his administrative remedies before filing a complaint. *Id.* 7-9. Second, they argue that Plaintiff's claims are barred by the statute of limitations. *Id.* at 6-7. Third, they contend that Plaintiff failed to show that constitutional violations occurred. *Id.* at 9-15. Fourth, Defendants claim that they are entitled to qualified immunity. *Id.* at 15-17. Because exhaustion is assessed under a different standard of review, the Court addresses that argument first. Defendants' remaining arguments are subsequently addressed in turn.

---

not include Officer Allen's name in his complaint, nor did he include any other officers' descriptions or the "John Doe" placeholder. Even though Plaintiff demonstrated his awareness of these officers' involvement at the time he filed his grievance, his failure to name or describe them in his complaint is fatal to his amendment: he had the capacity to place the other officers on notice of his intent to sue them, but he chose not to do so. Moreover, Plaintiff fails to even allege in his motion to amend that the officers had notice of his suit. Therefore, Plaintiff's motion to amend and add these officers as defendants must be denied. *Allah v. Gramiak*, No. 5:13-CV-186-MTT-MSH, 2015 WL 9267214, at *4 (M.D. Ga. Nov. 5, 2015) (denying Plaintiff's motion to amend and add defendant where Plaintiff provided "no evidence to show that [the potential defendant] received notice of th[e] action" or "even allege that she received notice of th[e] action"), *recomm. adopted sub nom. Allah v. Tyndal*, No. 5:13-CV-186 (MTT), 2015 WL 9274929 (M.D. Ga. Dec. 18, 2015).

## I. Exhaustion

### A. Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."[3] *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* If, taking the plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.* In resolving the factual dispute, a court is authorized to make credibility determinations. *See Bryant*, 530 F.3d at 1377-78 (finding district court did not clearly err in determining plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court's weighing of the evidence and credibility determination to find that one of the inmate's grievances was not filed). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the court can resolve factual disputes using evidence from outside the pleadings. *Bryant*, 530 F.3d at 1376-77.

[3] "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (internal quotation marks omitted).

B. MCJ Administrative Procedures

Defendants submitted the declaration of Stacy Horan—whose responsibilities include serving as Grievance Investigator at MCJ—to establish that administrative remedies were available to Plaintiff at MCJ. Horan Decl. ¶ 2, ECF No. 19-8. According to MCJ grievance standard operating procedures, grievances that cannot be resolved informally may be submitted using the Kiosk system within five days of when an inmate discovers or reasonably should have discovered the incident. *Id.* ¶ 5; Horan Attah. Ex. A, at 27 ¶¶ F-G, ECF No. 19-9. The grievance officer must then "provide a written response . . . within fifteen days of receiving the complaint." Horan Attah. Ex. A, at 27 ¶ L. Then, after "receiving [the] formal response to the grievance, [the inmate] may accept the findings and action taken . . . or appeal the decision to the Jail Commander or designee." *Id.* at 27 ¶ M. The grievance system is terminated only after the Jail Commander or their designee responds to the appeal. *Id.* at 28 ¶ P.

C. Plaintiff Exhausted Administrative Remedies

Plaintiff submitted approximately 850 pages of grievances while detained at MCJ. MSJ Br. 9; Horan Attach. Ex. D. The Court reviewed each grievance and found only one relevant to the December 15, 2022, incident: Grievance 30286033.[4] Horan Attach. Ex. D, at 829. That grievance states the following:

> I was assaulted by officers on squad 1 in the dayroom and cell but this im referring to the outer dayroom area. I want to press charges on each officers [sic] involved in the incident[]; 1. Sgt. Ireland 2. C/o payne C/o

[4] Plaintiff also filed a Sick Call Request, wherein he chronicled his alleged injuries from the incident. Horan Attach. Ex. D, at 828.

> (w/m, Tall, slim, originally on squad 2, drive silver Toyota car, curly hair) John Doe and any other officer such as c/o allen if involved.

*Id.* Plaintiff submitted this grievance on December 17, 2022, two days after the December 15, 2022, incident. *Id.*; Compl. Attach. 1. Lieutenant Foster responded on December 22, 2022, and explained to Plaintiff that "[the] incident was considered a Use of Force and is under investigation. It cannot be grieved or discussed until the investigation is complete." Horan Attach. Ex. D, at 829.

Defendants claim that Plaintiff failed to exhaust his administrative remedies on two grounds. MSJ Br. 7-9. First, Defendants argue that Plaintiff's grievance is deficient because it "made no mention of either Lt. Toelle or C.O. Wright." *Id.* at 9. Second, Defendants contend that Plaintiff "closed out the grievance" and "did not attempt to appeal[,]" thus failing to adhere to MCJ's exhaustion procedures. *Id.*

In response, Plaintiff first addresses his failure to include the names of Defendants Toelle and Wright within the grievance. Plaintiff explains that, while he did not include Defendant Wright's name in the grievance, he [did] include "a John Doe description of C.O. Wright . . . that fits the description of Defendant Wright." Pl. Resp. to MSJ (MSJ Resp.) 24, ECF No. 48-1. He also explains that the language "any other officer such as c/o Allen if involved" was to serve as a placeholder for the officers he did not know were present during the incident. *Id.* Plaintiff was only later able to identify Defendant Toelle after reviewing video footage of the incident on May 19, 2026. *Id.* at 19.

Second, Plaintiff addresses closing out the grievance and failing to appeal it. Plaintiff recounts that he "was left with no choice on the kiosk but [to] close upon

opening [the] response of Lieutenant Foster[.]" MSJ Resp. 22, 24. And, because Plaintiff was instructed that the incident could not be grieved or discussed until the investigation was complete, he believed he was following Foster's directive by closing out his grievance and not appealing it. *Id.*; Horan Attach. Ex. D, at 829. Finally, Plaintiff contends that he was never notified when the investigation was completed. MSJ Resp. 22.

Based on the evidence Defendants provided, the Court finds that Plaintiff exhausted available administrative remedies. As an initial matter, Plaintiff timely grieved the December 15, 2022, incident on December 17, 2022, which was within the five-day timeframe mandated by MCJ policies. Horan Attach. Ex. A, at 27 ¶ F & Ex. D, at 829.

Regarding Plaintiff's failure to include the names of Defendants Toelle and Wright in his grievance, Defendants' arguments fail. It is true that MCJ policies instruct inmates to include the "names of [the] jail officers" involved in their grievances. Horan Attach. Ex. A, at 27 ¶ H. However, the PLRA's exhaustion requirement "is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]'" *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (citing *Jones*, 549 U.S. at 219). Therefore, a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck*, 627 F.3d at 1218. "[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219. Therefore, it is acceptable for Plaintiff to name

Defendants Toelle and Wright in his lawsuit, even if he did not state their names in his grievance. *See Lane v. Philbin*, No. 7:13-CV-36 (HL), 2017 WL 4228888, at *4 (M.D. Ga. Sept. 22, 2017) ("While [Plaintiff's] grievances did not specifically name [the defendant], the PLRA did not require that he do so. [Plaintiff] accomplished the purpose of [the PLRA] by alerting prison officials that [prison] administrators failed to protect his constitutional rights.")

Defendants' second argument—that Plaintiff did not exhaust because he closed out the grievance and failed to appeal it—also fails. Lieutenant Foster instructed Plaintiff that the incident could not be grieved or discussed because it was under investigation. Horan Attach. Ex. D, at 829. MCJ grievance policies do not provide procedures for how inmates should otherwise exhaust their administrative remedies once a use of force investigation is initiated. *See* Horan Attach. Ex. A, at 26-28 (providing no grievance procedures applicable to use of force investigations). In an attempt to comply with the only directions that he was supplied, Plaintiff closed out the grievance and did not request an appeal. MSJ Resp. 24. Plaintiff also alleges that he was not made aware of the conclusion of the investigation, MSJ Resp 22, and Defendants neither refute that assertion nor do their exhibits show that Plaintiff was notified of the investigation's results. Consequently, Plaintiff was never provided notice that the incident had become grievable, and he continued to follow Foster's directive. Plaintiff availed himself of the administrative procedures available to him and, therefore, satisfied the exhaustion standard. *See White v. Berger*, 709 F. App'x 532, 541-42 (11th Cir. 2017) (holding, in part, that a plaintiff exhausted

administrative remedies where he filed a grievance and was subsequently told by prison staff that the "issues were not grievable"). Thus, Defendants' exhaustion arguments fail, and it is recommended that Defendants' motion for summary judgment be denied on this ground.

## II. Excessive Use of Force and Failure to Intervene Claims

In addition to exhaustion, Defendants contend that they are entitled to summary judgment for three reasons: (1) Plaintiff's claims are barred by the statute of limitations, (2) Plaintiff failed to show that constitutional violations occurred, and (3) Defendants are entitled to qualified immunity. MSJ Br. 6-7, 9-17. Plaintiff argues that his complaint was timely filed and that his constitutional rights were violated, meaning Defendants are not entitled to qualified immunity. MSJ Resp. 14-19, 25-31. For the reasons explained below, Defendants' motion for summary judgment on Plaintiff's deliberate indifference claim against Defendant Toelle should be granted, but their motion for summary judgment on Plaintiff's excessive force claims should be denied.

### A. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 255 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citation omitted). If the movant meets this burden, "[t]he burden then shifts to the nonmoving party, who is required to 'go beyond the pleadings' to establish that there is a 'genuine issue for trial.'" *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (quoting *Celotex Corp.*, 477 U.S. at 324). This evidence must consist of more than conclusory allegations. See *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## B. Material Facts

On December 15, 2022, Plaintiff, a pretrial detainee, was housed in the South Tower on the fourth floor in Dorm G. Parker Ex. A, at 2, ECF No. 19-6; Pl.'s Decl. ¶ 9, ECF No. 48-3. Dorm G is known to house troubled inmates, meaning those with

"a documented history of attacking officers, other inmates, and causing disorder in the daily operation of the [MCJ]." Parker Ex. A, at 2; Pl. Decl. ¶ 10.

At 8:48 p.m., Defendant Ireland received a call requesting assistance on the Fourth Floor of South Tower. Ireland Decl. ¶ 4, ECF No. 19-3; Pl. Decl. ¶ 11. When he arrived, Officer Colon advised him that Plaintiff "wanted [Defendant Ireland] to turn on his toilet so that he could flush it and give him water." Ireland Decl. ¶ 4; Pl. Decl. ¶ 11. When Defendant Ireland entered Dorm 4G, he immediately noticed a large amount of water on the day room floor coming from Plaintiff's cell. Ireland Decl. ¶ 5. Defendant Ireland believed that the water was a result of Plaintiff intentionally flooding the area. *Id.*; Pl.'s Decl. ¶ 12. Plaintiff then requested water and snacks, which Defendant Ireland denied. Ireland Decl. ¶ 5; Pl. Decl. ¶ 12. Due to the flooding, Defendant Ireland requested that K-9 Officer Corporal Marc Shubert, K-9 Rico, and Defendant Toelle come to Dorm 4G for assistance. Ireland Decl. ¶ 6. During this time, Plaintiff "prepared for their attack" because he "felt the tension." Pl. Decl. ¶ 13.

Defendants submitted video evidence of the incident, which the Court relies on for much of what transpires next. Parker Decl. Ex. B, ECF No. 19-7. Once Defendants arrived at Dorm 4G, they proceeded to Plaintiff's cell. Ireland Decl. ¶ 6. Defendant Toelle used his flashlight to see inside the cell. Parker Decl. Ex. B (MSJ Video), at 8:56:37. Plaintiff was on the top bunk with a towel around his face, and he had barricaded himself behind his jail-issued mattress. Ireland Decl. ¶ 6. Defendant Toelle then commanded Plaintiff "get on the ground." MSJ Video 8:58:56-

57; Toelle Decl. ¶ 5; ECF No. 19-2. Plaintiff screamed at Defendants and refused to comply with their orders. MSJ Video 8:58:56-9:00:03. Defendant Tolle called via radio for any available officer to proceed to Dorm 4G with the riot shield. *Id.* at 8:59:51; Toelle Decl. ¶ 7; Pl. Decl. ¶15. Another officer arrived at the scene with a riot shield around 9:00 p.m. MSJ Video 9:00:03.

Defendant Toelle instructed Plaintiff multiple times to get on the ground and put his hands behind his back. *Id.* at 9:01:28-9:01:52. Plaintiff screamed continuously at Defendants and did not comply. *Id.* Defendant Toelle said to Plaintiff, "alright, last warning." *Id.* at 9:02:01-03. Defendant Toelle then opened the cell door with the riot shield protecting him, at which time Plaintiff threw an unknown liquid substance at the shield. *Id.* at 9:02:17. At that moment, Defendant Schubert deployed K-9 Rico into Plaintiff's cell. *Id.* at 9:02:21. Plaintiff shielded himself from K-9 Rico with his mattress. Ireland Decl. 10; Pl. Decl. ¶ 16. K-9 Rico bit down on the mattress and would not release it. Ireland Decl. 10; Pl. Decl. ¶ 16. While Defendant Schubert was attempting to retrieve K-9 Rico, Plaintiff and Defendant Schubert exchanged closed-fisted strikes. Ireland Decl. 10; Pl. Decl. ¶ 17. Defendant Schubert and K-9 Rico then exited the cell. MSJ Video 9:02:46.

At this point, Defendants Ireland, Toelle, and Wright entered the cell and attempted to force Plaintiff from the top bunk.[5] *Id.* at 9:02:52; Ireland Decl. 11; Pl. Decl. ¶ 18. The events that occurred inside Plaintiff's cell are largely disputed and

---

[5] Three more officers arrived on scene at various times. MSJ Video 9:03:02, 9:03:40. At this point, Sargent Ivey, and Officers Allen, McCauley, and Kornegay were present on the scene and were attempting to help restrain Plaintiff. Ireland Decl. ¶ 11.

unrecorded on the video submitted by Defendants, which was filmed from a fixed angle from above and away from Plaintiff's cell. However, it is clear from the camera audio that a struggle then ensued, through which Plaintiff continually screamed. *Id.* at 9:03:04-46. Plaintiff claims that Defendant Toelle attacked Plaintiff with the shield, striking his forearm. Pl. Decl. ¶ 18. In addition, Plaintiff claims that Defendant Wright "attempted to grab [Plaintiff] but couldn't." *Id.* Plaintiff then describes how he "gave up" and got down on the floor on his own. *Id.* ¶ 18-19. He explains that Officer Ivey put Plaintiff's arm behind his back, and Defendants Wright and Toelle struck him with their fists multiple times. *Id.* ¶ 19. After that, Plaintiff describes how he "partially lost consciousness" until he felt "[Defendant] Payne pull[] his hair[.]" *Id.* ¶ 20. Finally, Plaintiff recalls that Defendant Payne "dropped his knee on [Plaintiff's] neck[.]" *Id.*

By contrast, Defendants claim that while they were attempting to remove Plaintiff from the top bunk, Plaintiff fought them and resisted their efforts. Toelle Decl. ¶ 10; Ireland Decl. ¶ 11; Payne Decl. ¶ 5, ECF No. 19-4. Rather than them striking Plaintiff, Defendants claim that Plaintiff struck and verbally threatened them until Defendants were able to remove him from the bunk and restrain him on the ground. Toelle Decl. ¶ 10; Ireland Decl. ¶ 11; Payne Decl. ¶ 5.

After Defendants restrained Plaintiff, they forcefully escorted him out of the cell. MSJ Video 9:05:33. Sergeant Ivy then either pushed Plaintiff, or fell with him, down to the floor with Plaintiff's hands restrained behind his back. *Id.* at 9:05:35. At this point, multiple officers converge on Plaintiff and restrain him. *Id.* at 9:05:35-

38. When some of the officers backed away, Plaintiff lifted his head and bowed out his chest in what appears to be an attempt to escape their hold on him. *Id.* at 9:05:53-59. Plaintiff succeeded in standing up and walking a short distance, with the officers maintaining their grip on him. *Id.* at 9:05:59-9:06:01. The officers then restrained Plaintiff face down on the ground once again. *Id.* at 9:06:05.

At this point, the parties again offer differing accounts, and the video evidence is partially obscured by officers standing between Plaintiff and the surveillance camera. It is clear that Defendant Ireland struck Plaintiff with his hand at least twice after Plaintiff spit at Defendant Ireland. *Id.* at 9:07:06-10; Ireland Decl. ¶ 16; Pl. Decl. ¶ 22. Defendant Payne then kicked Plaintiff in the head. MSJ Video 9:07:11-12; Payne Decl.¶ 9; Pl. Decl. ¶ 23. Defendant Ireland claims he punched Plaintiff "in self-defense and to deter further aggression[.]" Ireland Decl. ¶ 16. Defendant Payne claims he kicked Plaintiff to "assist officers in gaining control of [Plaintiff's] head." Payne Decl. ¶ 9. Plaintiff explains that he spit at Defendant Ireland because he felt threatened. Pl. Decl. ¶ 22. Moreover, Plaintiff claims that Defendants Ireland and Wright struck him "multiple times in rapid succession" and Defendant Payne "kick[ed him] in the face" when he "was under control with [his] hands behind [his] back in hand restraints[.]" *Id.* at 23.

Immediately after the kick, Officer Kornegay and Defendant Toelle removed Defendant Payne from Dorm 4G. MSJ Video 9:07:16-18. The remaining officers restrained Plaintiff on his side in the prone position on the ground. *Id.* at 9:07:18. Plaintiff continued struggling against his restraints and screaming. *Id.* at 9:07:18-

9:10:45. Plaintiff claims that Defendant Ireland then placed his forearm down so hard on Plaintiff's neck that he could not breathe, and other officers, including Defendant Wright, "twisted [Plaintiff's] body from the waist down almost at a 180 [degree] angle[.]" Pl. Decl. ¶ 26. Plaintiff attempted to escape for a second time, but the officers kept him restrained on the floor. *Id.* at 9:10:45. Nurse Knight arrived on scene and screened Plaintiff for injuries. *Id.* at 9:12:18-9:25:48. Plaintiff was then returned to his cell. *Id.* at 9:26:20-29.

C. Statute of Limitations

"A prisoner's complaint may be dismissed . . . as time-barred if it 'appear[s] beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'" *Zamudio v. Haskins*, 775 F. App'x 614, 615 (11th Cir. 2019) (quoting *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003)). "In section 1983 actions, federal courts refer typically to state law to determine the applicable statute of limitations and tolling rules." *Id.* at 615-16 (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)). As previously discussed, Georgia's two-year statute of limitations applies in this case. O.C.G.A. § 9-3-33; *Bell,* 521 F. App'x at 864.

Defendants argue that Plaintiff's claims are barred by the statute of limitations because he failed to file his complaint within the two-year timeframe following the December 15, 2022, incident. MSJ Br. 6-7. Two years from the date of the incident is December 16, 2024.[6] Defendants mistakenly state that Plaintiff

[6] December 15, 2024, fell on a Sunday, so Plaintiff had until the following Monday, December 16, 2024, within which to timely file his complaint. Fed. R. Civ. P. 6(a)(1)(C).

filed his complaint on February 7, 2025, which is the date the Court docketed the complaint. *Id.* at 6. However, Defendants fail to consider the *pro se* prisoner mailbox rule in their analysis, which dictates that "a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. . . . [A]bsent evidence to the contrary, [the court assumes that the] prisoner delivered a filing to prison authorities on the date that he signed it." *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (internal citations omitted). Here, Plaintiff signed his complaint on December 8, 2024. Compl. 7. Thus, the Court considers Plaintiff's complaint to be filed on that date: eight days before the statute of limitations ran.[7] As such, Plaintiff's claims are not barred by the statute of limitations. Consequently, the Court should deny Defendants' summary judgment on this ground.

D. Excessive Force

"[A] pretrial detainee raising a Fourteenth Amendment claim needn't prove an officer's subjective intent to harm but instead need show only that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). "The objective-reasonableness determination must be made 'from the perspective of a reasonable officer on the scene.'"[8] *Shuford v.*

[7] Plaintiff's envelope is dated February 4, 2025. Compl. Envelope, ECF No. 1-2. This delayed mailing date indicates two alternative theories: (1) that Plaintiff dated his complaint earlier than he presented it to the mailroom, or (2) that, after being timely presented with Plaintiff's complaint, the mailroom did not post it until two months later. However, in addition to omitting a discussion of the *pro se* prisoner mailbox rule, Defendants also fail to mention the date on the envelope *and* fail to provide any evidence contradicting Plaintiff's signature date. Consequently, the Court finds that Plaintiff timely filed his complaint.

[8] While Plaintiff's excessive force claims as a pre-trial detainee are governed by the Fourteenth

*Conway*, 666 F. App'x 811, 816 (11th Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397). To determine whether the amount of force used was objectively reasonable, the Court must consider "the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This includes consideration of:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* "In considering these factors, [the Court] 'give[s] "a wide range of deference to prison officials acting to preserve discipline and security," including when considering decisions made at the scene of a disturbance.'" *Jacoby v. Mack*, 755 F. App'x 888, 898 (11th Cir. 2018) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)).

As an initial matter, some amount of force was clearly required "to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). Plaintiff was detained in a dorm designated for inmates known to be violent and disruptive. Pl. Decl. ¶¶ 9-10; Parker Ex. A, at 2. Throughout the incident, Plaintiff acted aggressively toward the officers and refused to comply with their instructions. By Plaintiff's own admission, when Defendant Ireland assumed Plaintiff flooded his cell

Amendment, the Eleventh Circuit has indicated that the objective-reasonableness standard used in Fourth Amendment excessive force claims is "the same basic standard." *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1183 n.7 (11th Cir. 2020). Therefore, the Court cites to cases in both the Fourteenth and Fourth Amendment context.

and denied Plaintiff water and snacks, Plaintiff "became irate" and "prepared for their attack[.]" Pl. Decl. ¶¶ 11-13. Plaintiff repeatedly ignored Defendants' commands to come down from the top of his bunk and lie on the floor. MSJ Video 8:58:56-9:00:03, 9:01:28-52. When Defendants removed Plaintiff from his cell and attempted to restrain him on the ground, he strained against them and would not remain on the floor. *Id.* at 9:05:35-38, 9:05:53-59, 9:05:59-9:06:01, 9:07:18-9:10:45. Finally, once restrained, Plaintiff spit once in the direction of, and a second time on, Defendant Ireland. Id. at 9:07:06-10; Ireland Decl. ¶ 16; Pl. Decl. ¶ 22. Thus, the evidence shows that the officers' general use of force was necessary in this circumstance in order to maintain order. *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."), *abrogated on other grounds as recognized by Williams v. Radford*, 64 F.4th 1185, 1198-99 (11th Cir. 2023).

However, while acknowledging the officers' need to maintain order, Defendants' motion for summary judgment on Plaintiff's excessive force claim still fails at the first *Kingsley* factor.[9] While Plaintiff's belligerence required the officers' *general* use of force, there is a question of fact as to whether the *amount* of force used in three specific circumstances was objectively reasonable. First, Plaintiff's and Defendants' versions of the facts diverge after the video evidence shows Defendants

[9] Because Defendants' motion fails at the first factor, the Court declines to address the remaining factors.

Ireland, Toelle, and Wright entering Plaintiff's cell. Plaintiff declares under penalty of perjury that, after entering his cell, Defendant Toelle attacked him with the riot shield by swinging it at him and hitting his forearm. Pl. Decl. ¶ 18. Plaintiff describes how he "gave up" and "got down on [his] own and laid on the floor on [his] stomach by the door[.]" *Id.* ¶¶ 18-19. According to Plaintiff, Defendants Wright and Toelle then struck him "while [he] didn't resist[,]" leading him to "partially loos[e] consciousness." *Id.* ¶¶ 19-20.

In contrast, Defendants claim that Plaintiff actively fought and resisted officers. Ireland Decl. ¶ 12; Toelle Decl. ¶ 10; Payne Decl. ¶ 5. Once Plaintiff was on the ground, Defendants claim that Plaintiff refused to put his hands behind his back, continued resisting, and attempted to spit on them. Ireland Decl. ¶ 12; Toelle Decl. ¶ 11. There are, thus, two competing narratives about the use of force applied inside Plaintiff's cell, and at summary judgment, "the district court may not take sides in a 'swearing match' between the parties, 'which is the stuff of which jury trials are made.'" *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 779 (11th Cir. 2024) (citations omitted). Defendants submitted video does not alter the Court's conclusion because the video does not depict the struggle in Plaintiff's cell. *Buckman v. Morris*, 736 F. App'x 852, 853 (11th Cir. 2018) (citing *Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018) ("But where the video does not clearly depict the events and there is evidence supporting both versions of events," at summary judgment, a court "accept[s] the [party opposing summary judgment's] version as controlling.")

Second, there is a question of fact as to whether Defendant Ireland's decision to punch Plaintiff in the head twice was an objectively reasonable use of force.[10] In Plaintiff's version of the facts, he spit once near Defendant Ireland to clear blood from his mouth, and then when he witnessed Defendant Ireland cock his hand back in a threatening manner, he spit directly on Defendant Ireland because he "felt threatened[.]" Pl Decl. ¶ 22. Both Plaintiff and Defendant Ireland recall Defendant Ireland striking Plaintiff with a closed fist at least two times, although Plaintiff indicates it was "multiple" times. Pl. Decl. ¶ 23; Ireland Decl. ¶ 16. Defendant Ireland describes both the first and second punches as choices made in self-defense and to deter further aggression. Ireland Decl. ¶ 16; MSJ Video 09:07:00-10. However, it is unclear to the Court why Defendant Ireland needed to engage in self-defense at that moment. Plaintiff was so restrained on the ground by multiple officers that the only means of aggressive behavior available to him was spitting. *See* MSJ Video 09:07:00-10 (showing Plaintiff restrained on the ground by multiple officers).

Third, there is a dispute of fact as to whether Defendant Payne's decision to kick Plaintiff in the head was an objectively reasonable use of force. Plaintiff recalled that Defendant Payne "kick[ed] [him] in the face . . . . [while he] was under control with [his] hands behind his back in hand restraints[.]" Pl. Decl. ¶ 23. Defendant Payne explained that he kicked Plaintiff in order to "assist officers in gaining control of his head" after Plaintiff spit on Defendant Ireland. Payne Decl.

[10] This incident was largely blocked from view of the camera; therefore, the Court must rely on the parties' declarations as evidence. MSJ Video 9:07:00-10.

¶ 9. As with the multiple punches, it is similarly unclear to the Court why this kick was necessary when Plaintiff was already restrained on the ground by multiple officers. *See* MSJ Video 09:07:00-10 (showing Plaintiff restrained on the ground by multiple officers).

Viewing the evidence in the light most favorable to Plaintiff, there exists a question of fact as to whether Defendants used excessive force against Plaintiff. Therefore, Defendants' motion for summary judgement on Plaintiff's excessive force claims should be denied.

E. Deliberate Indifference to Safety/Failure-to-Intervene Claim

Like excessive force claims, deliberate indifference claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's due process clause. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Because the standards for a deliberate indifference claim under the Fourteenth Amendment are identical to those under the Eighth Amendment, they may be applied interchangeably. *Id.* To establish a claim for deliberate indifference to safety, a prisoner "must show (1) a substantial risk of serious harm; (2) the [prison officials'] deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks omitted).

When examining the first element—a substantial risk of serious harm—courts use an objective standard. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007). A plaintiff must "show conditions that were extreme

and posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted). "Plaintiffs can make this showing by demonstrating either a 'general threat' to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a 'specific threat' to the prisoner." *Spradlin v. Toby*, No. 5:23-cv-328 (MTT), 2024 WL 3881483, at *4 (M.D. Ga. Aug. 19, 2024) (quoting *Marbury*, 936 F.3d at 1233, 1235). To constitute a substantial risk of serious harm, there must be "a strong likelihood, rather than the mere possibility of grievous injury." *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (internal quotation marks omitted).

"To establish the second element—deliberate indifference—a plaintiff must [show] that the defendant: (1) 'was subjectively aware that the inmate was at risk of serious harm'; (2) 'disregarded that risk'; and (3) 'acted with subjective recklessness as used in the criminal law.'" *Spradlin*, 2024 WL 3881483, at *4 (quoting *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc)). To satisfy the subjective awareness component, a plaintiff must show that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[ew] the inference." *Marbury*, 936 F.3d at 1233 (second alteration in original) (internal quotation marks and citation omitted). Whether a risk has been disregarded is an objective inquiry, requiring a plaintiff to show that the defendant "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act."

*Id.* (internal quotation marks and citation omitted). To "prove that the defendant acted with subjective recklessness as used in the criminal law," a "plaintiff must show that the defendant was subjectively aware that his [or her] own conduct put the plaintiff at substantial risk of serious harm[.]" *Wade*, 106 F.4th at 1255.

For the third element, causation, a "plaintiff must show a necessary causal link between the [defendant's] failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (internal quotation marks and citation omitted). "This causal element requires proof that the officer (1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson*, 89 F.4th at 1298 (internal quotation marks and citation omitted).

Here, Defendant Toelle moves for summary judgment on Plaintiff's deliberate indifference claim, arguing that Plaintiff failed to show a constitutional violation and that Defendant Toelle in fact intervened after Defendant Payne kicked Plaintiff. MSJ Br. 13-15. Plaintiff disputes Defendant Toelle's version of the facts, arguing that he "merely watched for seconds . . . [and] said nothing . . . [while] in position to do so." MSJ Resp. 29. However, the video evidence contradicts Plaintiff and supports Defendant Toelle's version of events. And, "[w]here a video in evidence obviously contradicts [the nonmovant's] version of the facts, we accept the video's depiction instead of [the nonmovant's] account and view the facts in the light depicted by the videotape[.]" *Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (second

and third alterations in original) (internal quotation marks and citations omitted). Thus, the Court relies on the video evidence in this circumstance because it clearly contradicts Plaintiff's account.

According to the video, the two punches delivered by Defendant Ireland and the kick delivered by Defendant Payne all occurred within a few seconds. MSJ Video 9:07:06-12. When these events occurred, Defendant Toelle was positioned a little more than an arm's reach away from Defendant Payne, and other officers were in-between him and Defendant Ireland. *Id.* As soon as Defendant Payne delivered the kick, three officers—including Defendant Toelle—intervened to remove Defendant Payne from the scene. *Id.* at 9:07:16-18. Thus, counter to Plaintiff's assertions, Defendant Toelle did intervene, and he did so within mere seconds of Defendant Ireland's first punch. Based on these facts, the Court should grant summary judgement and dismiss Plaintiff's failure to intervene claim against Defendant Toelle.

E. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity on all claims. MSJ Br. 15-17. "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009) (internal quotation marks and citation omitted). A defendant seeking qualified immunity must show that, at the time of the alleged wrongful acts, "he was acting

within the scope of his discretionary authority." *Id.* at 905. Once this is established, "the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." *Id.* (internal quotation marks and citation omitted). To do so, a plaintiff must "demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Id.* (internal quotation marks and citation omitted).

It is undisputed that Defendants were acting within their discretionary authority as MCJ officers. MSJ Br. 16; Pl. Decl. ¶ 4-8. Moving to the second step, Plaintiff has demonstrated that there is, at minimum, a question of fact as to whether Defendants used excessive force. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (noting that when a plaintiff alleges facts sufficient to survive a motion for summary judgment on his Eighth Amendment excessive force claim, that ends the qualified immunity inquiry) (citation omitted), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Thus, the Court should not find that Defendants are entitled to qualified immunity, and Defendants' motion for summary judgment on Plaintiff's excessive force claims should be denied. *See West v. Temple*, No. 5:14-CV-86-MTT-MSH, 2016 WL 4087108, at *6 (M.D. Ga. July 29, 2016) ("Having found that there is a question of fact as to whether Defendants used excessive force, the Court cannot find that Defendants are entitled to qualified immunity."), *recomm. adopted* 2016 WL 5339580 (M.D. Ga. Sept. 21, 2016).

However, Defendant Toelle is entitled to qualified immunity on Plaintiff's failure to intervene claim. As discussed above, the video evidence shows that Defendant Toelle intervened to protect Plaintiff. MSJ Video 9:07:16-18. Because Defendant Toelle was not deliberately indifferent to Plaintiff's safety, Plaintiff has failed to show a constitutional violation as to his failure to intervene claim. Therefore, the Court should grant summary judgment and dismiss Plaintiff's failure to intervene claim against Defendant Toelle.[11]

## CONCLUSION

For the reasons explained above, Plaintiff's motion to amend (ECF No. 37) is granted in part and denied in part, such that the Court considered Plaintiff's additional factual allegations brought against Defendant Ireland. Defendants' motion for summary judgment (ECF No. 19) should be denied as to Plaintiff's excessive force claims but granted as to Plaintiff's failure to intervene claim against Defendant Toelle. Only Plaintiff's excessive force claims against all Defendants should proceed.[12]

---

[11] Plaintiff only brought a failure to intervene claim against Defendant Toelle in his complaint. Compl. Attach. 1. As discussed above, however, the material facts and evidence cited by both parties indicate that Defendant Toelle was a member of the group that entered Plaintiff's cell and engaged in a physical altercation with Plaintiff. MSJ Video 9:02:52; Thomas Decl. ¶ 10; Ireland Decl. ¶ 11; Pl. Decl. ¶ 18. Because there is a question of fact as to whether Defendant Toelle used excessive force at that moment in Plaintiff's cell, Defendant Toelle should not be entirely dismissed from this action.

[12] Plaintiff also filed a motion to "investigate why Order 51 was not received" (ECF No. 55) and a motion to reconsider his motion to amend (ECF No. 57). The Court's Order at ECF. No. 51 denied Plaintiff's motion for reconsideration of a motion for extension of time to respond to summary judgment, and it granted his motion for leave to file excess pages in his response to summary judgment. Text-Only Order, Jul. 16, 2026, ECF No. 51. Plaintiff filed his response to Defendants' motion for summary judgment on June 16, 2026—forty-four days before July 30, 2026, when he filed these two motions. Mot. Investigate 1, ECF No. 55; Mot. for Reconsid. 2, ECF No. 57. Moreover, Plaintiff received two extensions of time to file his response (ECF Nos. 33, 42). Finally, the Court granted the motion for page-limit extension in his favor. Text-Only Order, Jul. 16, 2026. Thus, Plaintiff was not prejudiced by not receiving the Court's order. For these reasons, and because Plaintiff's request is

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 21st day of August, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE

not an actionable claim, his motion to investigate (ECF No. 55) is **DENIED**. Because the Court considered Plaintiff's motion to amend herein, his motion for reconsideration (ECF No. 57) is **DENIED as moot**.